1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JUILAKI STRAWTHER,                        No. 2:13-cv-1357-MCE-EFB P

12                  Petitioner,

13          vs.

14   RANDOLF GROUNDS,                           FINDINGS AND RECOMMENDATIONS

15                  Respondent.

16

17          Petitioner is a state prisoner proceeding without counsel with a petition for a writ of

18   habeas corpus pursuant to 28 U.S.C. § 2254.  He challenges a judgment of conviction entered

19   against him on December 15, 2009, in the Sacramento County Superior Court on charges of

20   second degree robbery with use of a firearm.  He seeks federal habeas relief on the following

21   grounds: (1) the trial court violated his right to due process in admitting testimony from a

22   fingerprint expert; (2) his trial counsel rendered ineffective assistance through numerous errors;

23   (3) jury instruction error violated his right to due process; (4) prosecutorial misconduct violated

24   his right to a fair trial; and (5) cumulative error at his trial violated his right to due process.  Upon

25   careful consideration of the record and the applicable law, the undersigned recommends that

26   petitioner's application for habeas corpus relief be denied.

27   /////

28   /////

1

## I. Background

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary:

> Defendant Juilaki Strawther appeals from his conviction of second degree robbery. He contends the trial court made numerous prejudicial errors regarding the admission of the prosecution's fingerprint evidence against him. Alternatively, he claims his trial counsel rendered ineffective assistance when she did not raise numerous objections to the fingerprint evidence. He also alleges instructional error and prosecutorial misconduct. We disagree with defendant's contentions and affirm the judgment.

> **FACTS**

> Jagdeep Singh and Kuldeep Lally were working at a 7–Eleven store on 43rd Avenue in Sacramento the evening of July 19, 2009. Singh was the assistant manager and worked at the cash register. Lally was the night clerk. He was responsible for stocking the shelves and cleaning the store regularly.

> One of Lally's duties included cleaning the store's counter areas. He would wipe the counters with a damp cloth. That day, he cleaned the counter in front of the cashier with a damp towel at 7:19:05 p.m. He was recorded doing so by the store's surveillance camera.

> At about 7:30 p.m. that evening, Singh was helping a customer when he noticed two men outside the store. After the customer left and while Singh was putting change in the register drawer, a man suddenly came up to him, displayed a gun, and told Singh to give him the money or he would shoot him. Singh feared he would be shot. He noticed the robber put his left hand onto the glass counter in front of the cash register while he held the gun in his right hand. The robber was not wearing gloves. Singh opened the drawer and gave the robber the money. The robber took the money, put the gun in his pants, and ran out. Singh then hit the robbery bell at his counter and called 911.

> Singh described the robber as Black, approximately 20 or 21 years of age, and wearing a beanie, a black jacket, and a t-shirt with a golden sign on the front. The robber also had a little beard and some facial hair. Singh did not notice any tattoos on the robber. The robber's gun was a black revolver with a long barrel.

> Singh was unable to identify the robber at trial. He was not sure if defendant was the robber, but he noted defendant's color and facial hair looked similar to the robber's. Singh had participated in a photo lineup about a week after the robbery, however, and at that time he identified defendant as the robber. His memory then was much better than it was at trial, and he was confident then that he

had identified the correct person.  He had seen the man he identified in the photo lineup in his store sometime during the month before the robbery, but not earlier on the day of the robbery.

Sacramento Police Department Detective Mike Mullaly was assigned to investigate the robbery.  On July 28, 2009, he met with the store's owner and viewed the surveillance tape of the robbery.  The tape showed the robber, and showed him pointing a revolver-type weapon at Singh.  It also showed the robber was accompanied by another person who wore a white t-shirt.  This accomplice remained outside of the store during the robbery.  Both the robber and his accomplice fled after the robbery.

Detective Mullaly became aware that defendant was a suspect in the robbery.  He administered the photo lineup to Singh.  Singh looked at the photos "for just a few seconds," pointed to defendant's photo, and said he was the robber.  Singh said he was certain he had selected the robber.

Fingerprint evidence was collected as part of the investigation.  On the evening of the robbery, Sacramento Police Department forensic investigator Bridget Wilson collected two latent fingerprints from the 7–Eleven's counter near the cash register and four latent prints from the interior of the store's door.

On October 13, 2009, Sacramento Police Department forensic investigator Darin Noonan met with defendant in order to take a set of "major case prints" from him.  Investigator Noonan described major case prints as "known exemplars from every portion of the hand, the joints of the fingers and of the palms and the lower portion and side portions of the palms that you would normally not obtain during the booking process."  Investigator Noonan obtained defendant's case prints and booked them into the file.  He also photographed defendant to document his identity as the person whose fingerprints he had collected.

Sacramento Police Department forensic investigator Timothy Sardelich analyzed the latent prints investigator Wilson had collected at the scene.  Along with the latent prints, investigator Sardelich received a known print from a database of known prints used for when someone applies for a background check, for employment with law enforcement, or by the Department of Motor Vehicles (DMV).[1]   The known print belonged to defendant.  Sardelich was asked to compare the latent prints with the known print.  Sardelich compared the latent prints taken from the scene with the known print, and he determined the latent prints taken from the 7–Eleven's glass counter matched defendant's known print.

Investigator Sardelich next compared defendant's known print from the database with the case prints taken from defendant by

---

[1]   Sardelich testified the database contained millions of prints, more than five million of which were from California.

investigator Noonan.  He concluded the known print and the case prints came from the same person.

From these comparisons, investigator Sardelich concluded one of the latent prints lifted from the 7–Eleven's counter was of defendant's left little finger.  Another latent print lifted from the counter was of defendant's left hand and fingers.  Other latent prints that had been lifted from the 7–Eleven's door by investigator Wilson during the robbery investigation did not match defendant's known print or his case prints.

We provide additional facts in context as necessary.

Following the presentation of evidence, a jury convicted defendant of one count of second degree robbery (Pen.Code, § 211).[2]  The jury also found true an allegation that defendant had personally used a firearm when he committed the crime.  (§ 12022.53, subd. (b).)

In a bifurcated bench trial, the court found true allegations that defendant had previously been convicted of a serious felony within the meaning of section 667, subdivision (a), and the "Three Strikes" law (§§ 667, subds.(b)-(i), 1170.12).

The court sentenced defendant to a state prison term totaling 25 years, calculated as follows: the upper term of five years on the robbery count, doubled under the Three Strikes law, plus a consecutive 10 years for the firearm use enhancement and a consecutive five years for the prior felony conviction.

*People v. Strawther*, No. C064127, 2012 WL 486877, at **1-3 (Cal.App. 3 Dist. Feb. 15, 2012).

After the California Court of Appeal affirmed petitioner's judgment of conviction, he filed a petition for review in the California Supreme Court.  Resp't's Lodg. Doc. 5.  On April 25, 2012, that petition was summarily denied.  Resp't's Lodg. Doc. 6.

**II.  Standards of Review Applicable to Habeas Corpus Claims**

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or application of state law.  *See Wilson v. Corcoran*, 562 U.S.___, ___, 131 S. Ct. 13, 16 (2010); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000).

/////

---

[2]  Further undesignated references to sections are to the Penal Code.

1   Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas

2   corpus relief:

3   An application for a writ of habeas corpus on behalf of a
    person in custody pursuant to the judgment of a State court shall not

4   be granted with respect to any claim that was adjudicated on the
    merits in State court proceedings unless the adjudication of the

5   claim -

6   (1) resulted in a decision that was contrary to, or involved
    an unreasonable application of, clearly established Federal law, as

7   determined by the Supreme Court of the United States; or

8   (2) resulted in a decision that was based on an unreasonable
    determination of the facts in light of the evidence presented in the

9   State court proceeding.

10   For purposes of applying § 2254(d)(1), "clearly established federal law" consists of

11   holdings of the United States Supreme Court at the time of the last reasoned state court decision.

12   *Thompson v. Runnels*, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing *Greene v. Fisher*, ___ U.S.

13   ___, 132 S.Ct. 38 (2011); *Stanley v. Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (citing *Williams v.*

14   *Taylor*, 529 U.S. 362, 405-06 (2000)).  Circuit court precedent "may be persuasive in determining

15   what law is clearly established and whether a state court applied that law unreasonably."  *Stanley*,

16   633 F.3d at 859 (quoting *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010)).  However, circuit

17   precedent may not be "used to refine or sharpen a general principle of Supreme Court

18   jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced."  *Marshall*

19   *v. Rodgers*, 133 S. Ct. 1446, 1450 (2013) (citing *Parker v. Matthews*, 132 S. Ct. 2148, 2155

20   (2012) (per curiam)).  Nor may it be used to "determine whether a particular rule of law is so

21   widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court,

22   be accepted as correct.  *Id.*  Further, where courts of appeals have diverged in their treatment of

23   an issue, it cannot be said that there is "clearly established Federal law" governing that issue.

24   *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

25   A state court decision is "contrary to" clearly established federal law if it applies a rule

26   contradicting a holding of the Supreme Court or reaches a result different from Supreme Court

27   precedent on "materially indistinguishable" facts.  *Price v. Vincent*, 538 U.S. 634, 640 (2003).

28   Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the

1    writ if the state court identifies the correct governing legal principle from the Supreme Court's

2    decisions, but unreasonably applies that principle to the facts of the prisoner's case.[3] *Lockyer v.*

3    *Andrade*, 538 U.S. 63, 75 (2003); *Williams*, 529 U.S. at 413; *Chia v. Cambra*, 360 F.3d 997, 1002

4    (9th Cir. 2004).  In this regard, a federal habeas court "may not issue the writ simply because that

5    court concludes in its independent judgment that the relevant state-court decision applied clearly

6    established federal law erroneously or incorrectly.  Rather, that application must also be

7    unreasonable." *Williams*, 529 U.S. at 412.  *See also Schriro v. Landrigan*, 550 U.S. 465, 473

8    (2007); *Lockyer*, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent

9    review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'").

10   "A state court's determination that a claim lacks merit precludes federal habeas relief so long as

11   'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v.*

12   *Richter*, 562 U.S.___,___,131 S. Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S.

13   652, 664 (2004)).  Accordingly, "[a]s a condition for obtaining habeas corpus from a federal

14   court, a state prisoner must show that the state court's ruling on the claim being presented in

15   federal court was so lacking in justification that there was an error well understood and

16   comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*,131

17   S. Ct. at 786-87.

18       If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing

19   court must conduct a de novo review of a habeas petitioner's claims.  *Delgadillo v. Woodford*,

20   527 F.3d 919, 925 (9th Cir. 2008); *see also Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008)

21   (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of §

22   2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering

23   de novo the constitutional issues raised.").

24       The court looks to the last reasoned state court decision as the basis for the state court

25   judgment.  *Stanley*, 633 F.3d at 859; *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).  If

26   _____

27       [3]   Under § 2254(d)(2), a state court decision based on a factual determination is not to be
     overturned on factual grounds unless it is "objectively unreasonable in light of the evidence
     presented in the state court proceeding." *Stanley*, 633 F.3d at 859 (quoting *Davis v. Woodford*,

28   384 F.3d 628, 638 (9th Cir. 2004)).

the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Richter*, 131 S. Ct. at 784-85. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." *Id.* at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. *Johnson v. Williams*, ___ U.S. ___, ___, 133 S.Ct. 1088, 1091 (2013).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). *Stanley*, 633 F.3d at 860; *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." *Himes*, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." *Richter*, 131 S. Ct. at 784.

A summary denial is presumed to be a denial on the merits of the petitioner's claims. *Stancle v. Clay*, 692 F.3d 948, 957 & n. 3 (9th Cir. 2012). While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny relief." *Richter*, 131 S. Ct. at 784. This court "must determine what arguments or theories ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 786. The petitioner bears "the burden

1  to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" *Walker v.*
2  *Martel*, 709 F.3d 925, 939 (9th Cir. 2013) (quoting *Richter*, 131 S. Ct. at 784).

3  When it is clear, however, that a state court has not reached the merits of a petitioner's
4  claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal
5  habeas court must review the claim de novo. *Stanley*, 633 F.3d at 860; *Reynoso v. Giurbino*, 462
6  F.3d 1099, 1109 (9th Cir. 2006); *Nulph v. Cook*, 333 F.3d 1052, 1056 (9th Cir. 2003).

7  **III. Petitioner's Claims**

8  **A. Fingerprint Evidence**

9  Petitioner's first three claims challenge the trial court's admission into evidence of the
10  testimony of Timothy Sardelich, the prosecution's fingerprint expert.  Claim one asserts that
11  Sardelich's testimony was without sufficient foundation and was therefore irrelevant.  ECF No. 1
12  at 13-20.[4]  Claim two argues that admission of Sardelich's testimony violated petitioner's due
13  process rights because the testimony was "confusing, misleading and irrelevant."  *Id.* at 26.
14  Claim three argues that the expert's testimony was inadmissible because it relied upon
15  "fingerprint transitivity, a new scientific technique that does not meet the requirements of the
16  *Kelly* test."  *Id.* at 28.

17  **1. State Court Decision**

18  The California Court of Appeal denied all of these claims, both on procedural grounds and
19  on the merits.  First, the court found that "[d]efendant has forfeited these arguments by not
20  objecting on these grounds at the trial court."  *Strawther*, 2012 WL 486877 at **3.  Second, it
21  found that "[e]ven if the arguments had been properly raised, they lack merit."  *Id.*  The court
22  described the background and explained its analysis as follows:

> **A. Additional background information**
>
> During trial and outside the presence of the jury, defense counsel
> suggested she intended to challenge the fingerprint testimony
> investigator Sardelich would give.  Counsel knew that Sardelich
> compared the crime scene latent prints and the "major case prints"
> taken by investigator Noonan with the known print taken from a

27
28  ───────────────
   [4]  Page number citations such as this one are to the page numbers reflected on the court's
   CM/ECF system and not to page numbers assigned by the parties.

database (in this case, a Department of Justice (DOJ) database), but he had not compared the latent prints and the case prints with each other. To further complicate the matter, the known print had not been introduced into evidence. According to counsel, Sardelich had used the known print "as the crux of what he would look at and compared that to everything else."

Counsel argued the evidence of the known print lacked foundation and a chain of custody. She also claimed the evidence was prejudicial. If the known print was admitted, the jury would wonder why DOJ had obtained defendant's prints back in 2004. Yet if the known print was not admitted, the expert's basis for claiming that the latent prints were defendant's would be missing.

Counsel asked for a hearing under Evidence Code section 402 to determine whether the known print was admissible. Counsel also asked that if the court determined the known print was not admissible, it exclude from evidence Sardelich's expert opinion as to the latent prints' identity, since he based that opinion on the known print.

Responding to counsel's motions, the prosecutor argued investigator Sardelich could use and reference the known print without having to admit it into evidence and still testify as to his opinion on the latent prints' identity. He explained the latent prints were entered into the DOJ's automated database, which notified the examiners of a potential match. This is how defendant was identified as a suspect. At that point, Tanya Atkinson of the crime scene investigations unit printed out the copy of the DOJ known print and compared it to the latent print taken from the crime scene. She verified the two matched.

The prosecutor, however, did not intend to have a witness testify to that. In his opinion, the DOJ known print only identified a possible suspect. He was not relying on the known print to tie defendant to the crime.

The prosecutor had obtained by court order defendant's major case prints. He had intended for an investigator to obtain the case prints and compare them with the latent prints. However, the investigator did not do that. Instead, investigator Sardelich compared the case prints investigator Noonan had obtained to the DOJ known print. This established the DOJ known print was in fact defendant's print.

Investigator Sardelich then took the DOJ known print and compared it to the latent prints lifted from the crime scene by investigator Wilson, and he determined they were a match. "So what we have is, as he put it, A equals B, B equals C, so, therefore, in his expert opinion he will say A equals C. [¶] Even if he doesn't say A equals C, [that] A equals B[and] B equals C establishes [defendant] left that latent print." Inexplicably, it never occurred to Sardelich to make, or to the prosecutor to direct Sardelich to make, a comparison of the latent prints with the major case prints.

9

Missing the obvious remedy of a direct comparison between A and C, the prosecutor offered "to sanitize" where the known print came from by asking investigator Sardelich if he had access to multiple databases used for background checks, employment screens, and DMV fingerprints.  He would then ask Sardelich if he compared the major case prints to a photo of a known print taken from one of those databases.  Once he compared them, Sardelich could say the known print was defendant's.  Then Sardelich could compare the known print to the latent prints and conclude in his expert opinion that it is the same person.  The prosecutor argued this sanitation would take care of any foundation and prejudice concerns raised by defense counsel.

Turning to defense counsel, the court asked whether an expert could rely on the case prints, the latent prints, and the known print and conclude in his opinion they were all defendant's prints.  Defense counsel did not answer the question directly.  Instead, she claimed that situation would force her to show the jury what she claimed was inadmissible evidence (the known print) in order to question the expert about his comparisons.

The court said that was not per se improper.  In fact, it was a common occurrence where expert opinions are challenged, as they can be based on inadmissible hearsay.

The court implied the evidence was admissible by stating it understood the prosecution's argument that the cross-comparisons of the three sets of prints supported the reliability of investigator Sardelich's opinion.  It denied defense counsel's motion to exclude any evidence to the extent the motion sought that relief.

The court also denied counsel's motion for an Evidence Code section 402 hearing without prejudice "because I have no idea exactly what's going to be said.  These are merely offers of proof at this time."

During trial, investigator Sardelich testified as an expert witness to the points discussed above.  Neither the prosecution nor the defense sought to admit the known print into evidence.  Defense counsel offered no objections to Sardelich's status as an expert witness or to his testimony.   On cross-examination, investigator Sardelich repeated he had reached his conclusions by comparing the crime scene latent prints with the known print, and the major case prints with the known print.

**B. Analysis**

Defendant has forfeited his argument that the court erred in admitting investigator Sardelich's testimony.  Defendant never objected to Sardelich's testimony as inadmissible because it was irrelevant, confusing, misleading, or lacking a proper scientific foundation, the grounds he raises on appeal.  At trial, defendant argued the evidence was inadmissible because it lacked foundation and a chain of custody and was prejudicial.  Defendant cannot raise an objection to evidence on appeal that was not made in the trial

court.  (Evid.Code, § 353, subd. (a); *People v. Partida* (2005) 37 Cal.4th 428, 435.)

Defendant's claims also fail on their merits.  The trial court did not abuse its discretion by admitting investigator Sardelich's testimony.  The testimony was relevant, was not confusing or misleading, and it did not require any particular scientific foundation.  No doubt Sardelich could have reached his opinion in a less circuitous route, but he nonetheless concluded the latent prints found at the crime scene belonged to defendant.  That opinion was obviously relevant, and the jurors could consider the manner in which Sardelich reached that opinion as part of determining the weight and credibility they would attach to his opinion.

Defendant argues investigator Sardelich's testimony was inadmissible because it relied on what he calls a "transitivity relation" that he claims in this case is false.  In logic, the term "transitive" "describes a given relation between terms such that if it exists between 'a' and 'b' and between 'b' and 'c,' then it also exists between 'a' and 'c.'  Typical transitive relationships include 'is greater than,' 'is equal to,' and 'is similar to.'" (*Encarta World English Dict.* (North Amer. ed.) [Microsoft Word 7 utility].)

Defendant claims fingerprint analysis is not mathematics but is contextual and subjective, and thus the type of transitive relationship used by the prosecutor and investigator Sardelich does not hold true here.  In his opinion, the relationship between the database known print, the latent prints, and the major case prints is a transitivity fallacy, similar to that expressed in such phrases as if A is perpendicular to B, and B is perpendicular to C, then A is perpendicular to C, or if A is a friend of B, and B is a friend of C, then A is a friend of C.  As a result, he argues the evidence was irrelevant, misleading, and based on a new scientific technique.  We disagree.

Expert testimony may "be premised on material that is not admitted into evidence so long as it is material of a type that is reasonably relied upon by experts in the particular field in forming their opinions.  [Citations.]  Of course, any material that forms the basis of an expert's opinion testimony must be reliable.  [Citation.] [¶] ...

"So long as this threshold requirement of reliability is satisfied, even matter that is ordinarily *inadmissible* can form the proper basis for an expert's opinion testimony.  [Citations.]  And because Evidence Code section 802 allows an expert witness to 'state on direct examination the reasons for his opinion and the matter ... upon which it is based,' an expert witness whose opinion is based on such inadmissible matter can, when testifying, describe the material that forms the basis of the opinion. [Citations.]" (*People v. Gardeley* (1996) 14 Cal.4th 605, 618, original italics.)

Defendant does not contest the reliability of the database known print.  And there is no doubt the DOJ database is reasonably relied upon by experts to assist with the fingerprint identification process.  (*See, e.g., People v. Farnam* (2002) 28 Cal.4th 107, 160.)  Thus,

11

whether the database known print was admissible is beside the point, as investigator Sardelich was free to rely upon it and discuss it in his testimony as material he relied upon to form his opinion.

Admitting the testimony also did not violate defendant's due process rights, as the evidence was not misleading, confusing, or lacking a required scientific foundation. Contrary to defendant's assertions, investigator Sardelich's testimony was that, based on his scientific analysis, the latent prints matched, or were equal to, the known print, which in turn matched, or was equal to, the major case prints. Each comparison was made in Sardelich's opinion to a scientific certainty. That was sufficient for purposes of expert opinion testimony, and whether it was a true or false transitive relationship was a matter of weight to be decided by the jury.

Due process was also accorded defendant. Counsel was able to, and did challenge investigator Sardelich's methodology and analysis on cross-examination. She chose not to introduce the known print because she did not want the jury to speculate why defendant had been fingerprinted years earlier. The jury had the latent prints and the major case prints to compare and determine their similarity for themselves. Moreover, Sardelich did not rely on the database's identification of the known print belonging to defendant as the means for identifying the prints. Rather, he first determined the latent print and the known print were made by the same person, and then he determined the known print and the case print were from defendant.

*Kelly* also did not bar investigator Sardelich's testimony. There is nothing in the record on which to claim Sardelich's methodology was not scientifically accepted. Transitive relationships are not novel to logic, and defendant certainly does not challenge the way in which Sardelich actually compared the various sets of prints.

We thus conclude the trial court did not abuse its discretion by admitting investigator Sardelich's fingerprint identification testimony.

*Strawther*, 2012 WL 486877 at **3-6.

### 2. **Analysis**

As set forth above, the California Court of Appeal ruled, in part, that petitioner forfeited his challenges to investigator Sardelich's testimony because his trial counsel failed to make a contemporaneous objection to that testimony on the same grounds that he raised on appeal. Respondent argues the state court's finding of waiver based on the lack of a contemporaneous objection constitutes a state procedural bar precluding this court from addressing the merits of petitioner's first three claims. ECF No. 11 at 43-45.

/////

State courts may decline to review a claim based on a procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977). As a general rule, a federal habeas court "'will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" *Calderon v. United States District Court (Bean)*, 96 F.3d 1126, 1129 (9th Cir. 1996) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)). The state rule is only "adequate" if it is "firmly established and regularly followed." *Id.* (quoting *Ford v. Georgia*, 498 U.S. 411, 424 (1991)); *Bennett v. Mueller*, 322 F 3d 573, 583 (9th Cir. 2003) ("[t]o be deemed adequate, the state law ground for decision must be well-established and consistently applied."). The state rule must also be "independent" in that it is not "interwoven with the federal law." *Park v. California*, 202 F.3d 1146, 1152 (9th Cir. 2000) (quoting *Michigan v. Long*, 463 U.S. 1032, 1040-41 (1983)). Even if the state rule is independent and adequate, the claims may be heard if the petitioner can show: (1) cause for the default and actual prejudice as a result of the alleged violation of federal law; or (2) that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 749-50.

Respondent has met his burden of adequately pleading an independent and adequate state procedural ground as an affirmative defense. *See Bennett*, 322 F.3d at 586. Petitioner does not deny that his trial counsel failed to make a contemporaneous objection to investigator Sardelich's testimony on the same grounds that he raised on appeal and also in his first three claims before this court. Although the state appellate court addressed petitioner's claims on the merits, it also expressly held that the claims were waived on appeal because of defense counsel's failure to object. Petitioner has failed to meet his burden of asserting specific factual allegations that demonstrate the inadequacy of California's contemporaneous-objection rule as unclear, inconsistently applied or not well-established, either as a general rule or as applied to him. *Bennet,* 322 F.3d at 586; *Melendez v. Pliler*, 288 F.3d 1120, 1124-26 (9th Cir. 2002). Petitioner's first three claims before this court therefore appear to be procedurally barred. *See Coleman*, 501 U.S. at 747; *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989); *Paulino v. Castro*, 371 F.3d 1083, 1092-93 (9th Cir. 2004).

1    Petitioner has also failed to demonstrate that there was cause for his procedural default or

2    that a miscarriage of justice would result absent review of the claims by this court.  *See Coleman*,

3    501 U.S. at 748; *Vansickel v. White*, 166 F.3d 953, 957-58 (9th Cir. 1999).  Ineffective assistance

4    of counsel will establish cause to excuse a procedural default if it was "so ineffective as to violate

5    the Federal Constitution."  *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (citing *Murray v.*

6    *Carrier*, 477 U.S. 478, 486–88 (1986)).  However, for the reasons explained below, the failure of

7    petitioner's trial counsel to object to the testimony of the fingerprint expert on the grounds raised

8    in the instant petition does not rise to the level of a constitutional violation.

9    Even if petitioner's challenges to the admission of investigator Sardelich's testimony are

10   not procedurally barred, they should be denied.  A writ of habeas corpus will be granted for an

11   erroneous admission of evidence "only where the 'testimony is almost entirely unreliable and . . .

12   the factfinder and the adversary system will not be competent to uncover, recognize, and take due

13   account of its shortcomings.'" *Mancuso v. Olivarez*, 292 F.3d 939, 956 (9th Cir. 2002) (quoting

14   *Barefoot v. Estelle*, 463 U.S. 880, 899 (1983)).  Evidence violates due process only if "there are

15   no permissible inferences the jury may draw from the evidence."  *Jammal v. Van de Kamp*, 926

16   F.2d 918, 920 (9th Cir. 1991).  Evidence must "be of such quality as necessarily prevents a fair

17   trial" for its admission to violate due process  *Id.* (quoting *Kealohapauole v. Shimoda*, 800 F.2d

18   1463, 1465 (9th Cir. 1986)).

19   Notwithstanding the above, the U.S. Court of Appeals for the Ninth Circuit has observed

20   that:

21
22
23
24
> The Supreme Court has made very few rulings regarding the admission of evidence as a violation of due process.  Although the Court has been clear that a writ should be issued when constitutional errors have rendered the trial fundamentally unfair (citation omitted), it has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ.

25   *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009).  Therefore, "under AEDPA, even

26   clearly erroneous admissions of evidence that render a trial fundamentally unfair may not permit

27   the grant of federal habeas corpus relief if not forbidden by 'clearly established Federal law,' as

28   laid out by the Supreme Court."  *Id.  See also Greel v. Martel*, No. 10-16847, 472 F. App'x 503,

14

504, 2012 WL 907215, *1 (9th Cir. Mar. 19, 2012) ("There is likewise no clearly established federal law that admitting prejudicial evidence violates due process.").[5]

In light of these authorities, the state court's rejection of petitioner's arguments that the trial court violated his right to due process in admitting Sardelich's testimony does not support the granting of federal habeas relief under AEDPA.  There is no "clearly established federal law" prohibiting the admission into evidence of the type of fingerprint testimony provided by investigator Sardelich.  As noted by the California Court of Appeal, Sardelich's testimony was undoubtedly relevant, it was not misleading or confusing, and it did not require a scientific foundation to be admissible.  ECF No. 12 at 13.

Assuming arguendo that the state court erred under federal circuit law in admitting the testimony, petitioner must still show that the error "had a substantial and injurious effect or influence in determining the jury's verdict" and that he suffered actual prejudice, defined as a "reasonable probability" that the jury would have reached a different result but for the error.  *See Clark v. Brown*, 450 F.3d 898, 916 (9th Cir. 2006) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).  *See also Fry v. Pliler*, 551 U.S. 112, 121-22 (2007) (in § 2254 habeas proceeding, federal court must assess prejudicial impact of constitutional error under *Brecht* "substantial and injurious effect" standard).  Petitioner has failed to make this showing.  Investigator Sardelich explained in detail how he compared fingerprints and reached the conclusion that petitioner's print was found at the 7-Eleven.  Petitioner's trial counsel cross-examined Sardelich on the methods he used to reach his conclusions.  The jury was instructed that it must "decide whether information on which the expert relied was true and accurate," and that it should "disregard any opinion that you find unbelievable, unreasonable, or unsupported by the evidence."  Clerk's Transcript on Appeal (CT) at 88.  By these means, the jury was given the tools to carefully evaluate Sardelich's testimony.

/////

/////

---

[5]  Citation to this unpublished Ninth Circuit opinion issued after January 1, 2007 is appropriate pursuant to Ninth Circuit Rule 36-3(b).

In addition, as noted by the California Court of Appeal in another part of its opinion, the

other evidence against petitioner was substantial.  Specifically,

> The victim identified defendant in a photo lineup as the person who robbed him, and, having seen the person in his store within the month before the robbery, he testified he was certain at the time of his identification that the person he selected was in fact the robber. That person was defendant.

*Strawther*, 2012 WL 486877 at *6-7.  Under these circumstances, there was no reasonable

possibility the jury would have reached a different verdict absent any error in admitting the

testimony of the fingerprint expert.

For the foregoing reasons, petitioner is not entitled to federal habeas relief on his first

three claims.

**B. Jury Instruction Error**

Petitioner's next ground for relief claims that the trial court violated his right to due

process when it failed to instruct the jury, *sua sponte*, that in order to conclude from investigator

Sardelich's testimony that the major case prints matched the latent prints, "the jury had to

determine whether a valid transitivity relation existed."  ECF No. 1 at 31.  Petitioner provides an

example of such an instruction, as follows:

> The fingerprint expert testified that the rolled Noonan prints matched the computerized known prints and the computerized known prints matched the latent prints lifted from the 7-Eleven glass countertop.  You must decide not only if the expert's matches are accurate but also whether they demonstrate a third match, that of the rolled Noonan prints and the latent prints.  You may only consider the fingerprint evidence as proof of guilt if you find the third match to be true.  Otherwise, the fingerprint testimony cannot be considered for any purpose.

*Id.* at 32 n.3.  Petitioner argues that "the crucial error in fingerprint analysis was the failure to

match the Noonan prints with the latent prints."  *Id.* at 33.  He contends that without a jury

instruction such as the one he suggests, he was unable to articulate his theory of defense and "the

jury simply acquiesced to [the expert's] testimony that the prints identified Petitioner as the

robber."  *Id.* at 31.

/////

/////

1

### 1. State Court Decision

2

The California Court of Appeal denied this claim, reasoning as follows:

3

4

Defendant asserts the trial court had a duty to instruct the jury sua sponte that it had to determine whether a valid transitive relationship existed between the three sets of prints. The trial court was under no such duty.

5

6

7

8

9

The court instructed the jury it was not required to accept investigator Sardelich's opinion as true, and that it could determine what meaning or importance to give to his opinion in reaching a verdict. (CALCRIM No. 332.) In that instruction, the court specifically informed the jury that "[y]ou must decide whether information on which the expert relied was true and accurate. You may disregard any opinion that you find unbelievable, unreasonable, or unsupported by the evidence."

10

11

12

13

These instructions adequately informed the jurors they could give whatever weight they believed appropriate to investigator Sardelich's opinion and the methods he used to reach that opinion. Had the court given any other instruction more specific than these on this issue, that instruction would have been argumentative. Thus, a pinpoint instruction was not required in this instance.

14

*Strawther*, 2012 WL 486877 at *6.

15

### 2. Applicable Law

16

In general, a challenge to jury instructions does not state a federal constitutional claim.

17

*McGuire*, 502 U.S. at 72; *Engle v. Isaac*, 456 U.S. 107, 119 (1982)); *Gutierrez v. Griggs*, 695

18

F.2d 1195, 1197 (9th Cir. 1983). "Failure to give [a jury] instruction which might be proper as a

19

matter of state law," by itself, does not merit federal habeas relief." *Menendez v. Terhune*, 422

20

F.3d 1012, 1029 (9th Cir. 2005) (quoting *Miller v. Stagner*, 757 F.2d 988, 993 (9th Cir. 1985)).

21

In order to warrant federal habeas relief, a challenged jury instruction "cannot be merely

22

'undesirable, erroneous, or even "universally condemned,"' but must violate some due process

23

right guaranteed by the Fourteenth Amendment." *Cupp v. Naughten*, 414 U.S. 141, 146 (1973).

24

To prevail on such a claim, petitioner must demonstrate "that an erroneous instruction 'so

25

infected the entire trial that the resulting conviction violates due process.'" *Prantil v. State of*

26

*Cal.*, 843 F.2d 314, 317 (9th Cir. 1988) (quoting *Darnell v. Swinney*, 823 F.2d 299, 301 (9th Cir.

27

1987)). In making its determination, this court must evaluate the challenged jury instructions "'in

28

the context of the overall charge to the jury as a component of the entire trial process.'" *Id.*

17

1   (quoting *Bashor v. Risley*, 730 F.2d 1228, 1239 (9th Cir. 1984)).  Where the challenge is to a

2   refusal or failure to give an instruction, the petitioner's burden is "especially heavy," because

3   "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of

4   the law."  *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977).  *See also Villafuerte v. Stewart*, 111

5   F.3d 616, 624 (9th Cir. 1997) (same).

6        A defendant is entitled to jury instructions that present the crux of his defense.  *See*

7   *Bradley v. Duncan*, 315 F.3d 1091, 1098-99 (9th Cir. 2002).  However, there is no entitlement to

8   tailor-made instructions that pinpoint certain aspects of the defense.  "'So long as the instructions

9   fairly and adequately cover the issues presented, the judge's formulation of those instructions or

10  choice of language is a matter of discretion.'"  *United States v. Hernandez-Escarsega*, 886 F.2d

11  1560, 1570 (9th Cir.1989) (quoting *United States v. Echeverry*, 759 F.2d 1451, 1455 (9th Cir.

12  1985)); *see also United States v. Del Muro*, 87 F.3d 1078, 1081 (9th Cir. 1996); *Duckett v.*

13  *Godinez*, 67 F.3d 734, 743 (9th Cir. 1995) ("it is not reversible error to reject a defendant's

14  proposed instruction on his theory of the case if other instructions, in their entirety, adequately

15  cover the defense theory").

16              **3.  <u>Analysis</u>**

17        Petitioner has not shown that the trial court violated his right to due process in failing to

18  give a *sua sponte* jury instruction on the necessity of a valid transitive relationship between the

19  three sets of fingerprints.  Petitioner's jury received the following instruction:

20                A witness was allowed to testify as an expert and to give an
            opinion.  You must consider the opinion, but you are not required to
21          accept it as true or correct.  The meaning and importance of any
            opinion are for you to decide.  In evaluating the believability of an
22          expert witness, follow the instructions about the believability of
            witnesses generally.  In addition, consider the expert's knowledge,
23          skill, experience, training, and education, the reasons the expert
            gave for any opinion, and the facts or information on which the
24          expert relied in reaching that opinion.  You must decide whether
            information on which the expert relied was true and accurate.  You
25          may  disregard  any  opinion  that  you  find  unbelievable,
            unreasonable, or unsupported by the evidence.
26

27  CT at 88.  As noted by the California Court of Appeal, this instruction adequately covered

28  petitioner's argument that Sardelich's testimony was not supported by sufficient evidence and/or

18

1   was illogical.  The jury was instructed to consider the reasons Sardelich gave for his opinion and

2   to reject that opinion if those reasons were "unbelievable, unreasonable, or unsupported by the

3   evidence."  That is essentially what petitioner's suggested instruction was designed to

4   accomplish.  The trial court's decision not to give additional instructions that were either legally

5   incorrect, argumentative, or cumulative did not render petitioner's trial fundamentally unfair.

6          The decision of the California Court of Appeal denying this jury instruction claim is not

7   contrary to, or an unreasonable application of, clearly established federal law.  It is certainly not

8   "so lacking in justification that there was an error well understood and comprehended in existing

9   law beyond any possibility for fairminded disagreement."  *Richter*, 131 S. Ct. at 786-87.

10   Accordingly, petitioner is not entitled to relief on this claim.

11          **C. Prosecutorial Misconduct**

12          Petitioner's next claim is that the prosecutor committed misconduct by "introducing

13   misleading fingerprint evidence, and suggesting during closing argument that Sardelich matched

14   petitioner's fingerprints directly with the latent prints."  ECF No. 1 at 34.  Petitioner states that

15   Sardelich's testimony was so confusing that the jury could have believed petitioner's case prints

16   had been compared with the latent prints, and he argues that "the prosecutor facilitated this

17   misperception during direct examination of the expert and failed to question [the expert] about a

18   transitivity analysis."  *Id.*

19          Petitioner specifically objects to the following portion of the prosecutor's closing

20   argument:

21          We have got the CSI officers.  Bridget Wilson, again, she's the one
            that powder [sic] lifted off the counter.  She watched the video
22          herself.  She told us that, saw where the suspect touched, gets lifts
            off the counter.
23
            She didn't know whose they are.  She didn't know it was going to
24          come back to this man, but she did her job.  She did it right.  She
            did it within her training.  No issues with what she did.
25
            Officer Noonan fingerprints the Defendant.
26
            This man left those cards that Noonan told us about.  And Tim
27          Sardelich ultimately does the comparisons.

28

1          Do you remember what he told us?

2          The defendant's prints.  No one else.

3
Reporter's Transcript on Appeal at 255.  Petitioner contends that this argument essentially
4
informed the jury that investigator Sardelich compared petitioner's fingerprints directly with the
5
latent prints and concluded they were both petitioner's fingerprints.  ECF No. 1 at 34.  Petitioner
6
notes that, on the contrary, "Sardelich never compared the [case] prints directly to the latent
7
prints."  *Id.*  He contends that the prosecutor's argument compounded both the confusion created
8
by Sardelich's testimony, and the prosecutor's failure to adequately cross-examine Sardelich or to
9
question him about "a transitivity analysis."  Finally, petitioner argues that, assuming the
10
prosecutor was attempting with his closing argument to explain "the transitivity relation," he was
11
"introduc[ing] facts not in evidence."  *Id.* at 34-35.
12
          Citing *People v. Friend*, 47 Cal.4th 1, 29 (2009) (defendant forfeited claims of
13
prosecutorial misconduct because his trial counsel failed to object), the California Court of
14
Appeal denied this claim on the grounds that it was waived by petitioner's failure to object to the
15
prosecutor's closing argument and to request an admonition from the trial court.  *Strawther*, 2012
16
WL 486877 at *6.
17
          Respondent argues that the state court's finding of waiver constitutes a state procedural
18
bar precluding this court from addressing the merits of this claim.  ECF No. 11 at 17-18.  As in
19
his first three claims, petitioner's claim of prosecutorial misconduct appears to be procedurally
20
barred because petitioner's trial counsel did not raise a contemporaneous objection to the
21
prosecutor's closing argument.  *See Coleman*, 501 U.S. at 747; *Harris*, 489 U.S. at 264 n.10;
22
*Paulino*, 371 F.3d at 1092-93.  However, even assuming that the claim is not procedurally barred,
23
it should be denied.
24
          A criminal defendant's due process rights are violated when a prosecutor's misconduct
25
renders a trial fundamentally unfair.  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  Claims of
26
prosecutorial misconduct are reviewed "'on the merits, examining the entire proceedings to
27
determine whether the prosecutor's [actions] so infected the trial with unfairness as to make the
28

1    resulting conviction a denial of due process.'"  *Johnson v. Sublett*, 63 F.3d 926, 929 (9th Cir.

2    1995) (citation omitted).  *See also Greer v. Miller*, 483 U.S. 756, 765 (1987); *Donnelly v.*

3    *DeChristoforo*, 416 U.S. 637, 643 (1974); *Towery v. Schriro*, 641 F.3d 300, 306 (9th Cir. 2010).

4    Relief on such claims is limited to cases in which the petitioner can establish that prosecutorial

5    misconduct resulted in actual prejudice.  *Darden*, 477 U.S. at 181-83.  *See also Towery*, 641 F.3d

6    at 307 ("When a state court has found a constitutional error to be harmless beyond a reasonable

7    doubt, a federal court may not grant habeas relief unless the state court's determination is

8    objectively unreasonable").  Prosecutorial misconduct violates due process when it has a

9    substantial and injurious effect or influence in determining the jury's verdict.  *See Ortiz-Sandoval*

10   *v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996).

11           Petitioner has failed to demonstrate that the prosecutor committed prejudicial misconduct

12   by virtue of his closing argument or any failure to examine the fingerprint expert.  Contrary to

13   petitioner's claim, the prosecutor's closing remarks did not inform the jury that Sardelich had

14   directly compared petitioner's fingerprints with the latent prints taken from the 7-Eleven.

15   Although the prosecutor mentioned the major case prints and the latent prints, he simply

16   reminded the jury that Sardelich had "done the comparisons."  Sardelich had previously testified

17   that he concluded petitioner's prints were on the 7-Eleven countertop after comparing the known

18   prints with the latent prints and then comparing the known prints with the major case prints taken

19   by investigator Noonan.  *Strawther*, 2012 WL 486877 at *4.  The prosecutor's vague reference to

20   Sardelich doing "the comparisons" could not contradict, nullify, or change this testimony.  In any

21   event, the jury was advised that:

22               Nothing that the attorneys say is evidence.  In their opening
             statements and closing arguments, the attorneys discuss the case,
23           but their remarks are not evidence.  Their questions are not
             evidence.  Only the witnesses' answers are evidence.
24

25   CT at 75.  Any possibility that the jurors might rely on the prosecutor's closing remarks to find,

26   contrary to Sardelich's testimony, that he compared the case prints with the latent prints would

27   have been eliminated by this instruction.

28   /////

21

1   Upon examination of the entire proceedings, this court concludes that the prosecutor's

2   performance did not "so infect[ ] the trial with unfairness as to make the resulting conviction a

3   denial of due process.'" *Johnson v. Sublett*, 63 F.3d 926, 929 (9th Cir. 1995) (citation omitted).

4   Accordingly, petitioner is not entitled to relief on this claim.

5          **D.  Ineffective Assistance of Counsel**

6          In his next ground for relief, petitioner claims that his trial counsel rendered ineffective

7   assistance.  He argues:

8              A.  Petitioner's trial counsel's assistance was ineffective for failing
               to object to Sardelich's testimony as irrelevant.
9

10             B.  Petitioner's trial counsel failed to cross-examine Sardelich
               concerning the fallacy of applying a transitivity relation to
11             fingerprint analysis or to introduce such evidence through a defense
               expert.

12             C.  Petitioner's trial counsel failed to cross-examine Sardelich
               concerning the effect of biasing contextual information on
13             fingerprint examiners or to introduce such evidence through a
               defense expert.
14
               D.  Petitioner's trial counsel failed to cross-examine Sardelich
15             concerning his testimony that only two points of similarity were
               found or needed for identification or to introduce contrary evidence
16             through a defense expert.

17   ECF No. 1 at 36.  Petitioner also claims his trial counsel rendered ineffective assistance in: (1)

18   failing to request a "limiting instruction for the known prints discussed by Sardelich;" (2) failing

19   to object to Sardelich's testimony on the grounds that it violated his right to due process; (3)

20   failing to make a "*Kelly*" objection; (4) failing to request a pinpoint jury instruction on the

21   "required transitivity finding;" and (5) failing to object to the prosecutor's closing remarks.  *Id.* at

22   26, 28, 30, 35, 36.

23          Petitioner argues that the case against him was "close."  *Id.* at 36.  He notes that the video

24   from the 7-Eleven did not identify him as the robber.  *Id.* at 25.  He argues that Jagdeep's failure

25   to identify him in court as the robber "tainted" his earlier lineup identification.  *Id.*  He also notes

26   that Jagdeep failed to notice any tattoos on the robber's hands, when petitioner has prominent

27   /////

28   /////

tattoos on his hands.  *Id.*  Finally, petitioner asserts that the six-photo lineup was unduly

suggestive because he and one other person had darker skin than the other participants in the

lineup.  *Id.*

### 1. State Court Decision

The California Court of Appeal denied petitioner's claims of ineffective assistance of trial

counsel, reasoning as follows:

> Defendant asserts his trial counsel provided ineffective assistance on numerous occasions by failing to: (1) object to investigator Sardelich's testimony as irrelevant and in violation of due process; (2) cross-examine Sardelich on the transitive relationship he used, his standard for determining any of the prints were matches, and the effect of "biasing contextual information;" (3) seek a *Kelly* hearing; (4) request a pinpoint or limiting instruction on proof of a transitive relationship; and (5) object to the prosecutor's closing argument.
>
> We have already determined the trial court committed no error by admitting investigator Sardelich's testimony.  Thus, there was no ineffective assistance when counsel chose not to make nonmeritorious, or even frivolous objections, to that testimony.  Even if there had been error, there was no prejudice.  It is not reasonably probable defendant would have obtained a more favorable outcome.  (*Strickland v. Washington* (1984) 466 U.S. 668, 687.)  The victim identified defendant in a photo lineup as the person who robbed him, and, having seen the person in his store within the month before the robbery, he testified he was certain at the time of his identification that the person he selected was in fact the robber.  That person was defendant.
>
> In light of such a strong identification, there is no reasonable probability defendant would have fared better at trial had counsel raised the objections and arguments appellate counsel raises here.

*Strawther*, 2012 WL 486877 at *6-7 (parallel citation omitted).

### 2. Applicable Legal Principles

The clearly established federal law for ineffective assistance of counsel claims is

*Strickland v. Washington*, 466 U.S. 668 (1984).  To succeed on a *Strickland* claim, a defendant

must show that (1) his counsel's performance was deficient and that (2) the "deficient

performance prejudiced the defense."  *Id.* at 687.  Counsel is constitutionally deficient if his or

her representation "fell below an objective standard of reasonableness" such that it was outside

"the range of competence demanded of attorneys in criminal cases."  *Id.* at 687–88 (internal

1  quotation marks omitted).  "Counsel's errors must be 'so serious as to deprive the defendant of a

2  fair trial, a trial whose result is reliable.'"  *Richter*, 131 S.Ct. at 787-88 (quoting *Strickland*, 466

3  U.S. at 687).

4         Prejudice is found where "there is a reasonable probability that, but for counsel's

5  unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466

6  U.S. at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the

7  outcome."  *Id.*  "The likelihood of a different result must be substantial, not just conceivable."

8  *Richter*, 131 S.Ct. at 792.  Under AEDPA, "[t]he pivotal question is whether the state court's

9  application of the *Strickland* standard was unreasonable."  *Id.* at 785.  "[B]ecause the *Strickland*

10  standard is a general standard, a state court has even more latitude to reasonably determine that a

11  defendant has not satisfied that standard."  *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

12              **3. Analysis**

13         The state court's conclusion that petitioner failed to demonstrate deficient performance or

14  prejudice with respect to his claims of ineffective assistance of trial counsel is not unreasonable

15  and should not be set aside.  As discussed above, the California Court of Appeal determined that

16  the trial court did not err in admitting the testimony of investigator Sardelich, either on state law

17  or federal due process grounds.  This court has rejected petitioner's federal due process claims.

18  Accordingly, with respect to petitioner's claims directed to Sardelich and his testimony about the

19  fingerprints, petitioner cannot show prejudice resulting from his counsel's failure to object on due

20  process grounds.  The failure to make a meritless objection does not constitute ineffective

21  assistance.  *See Jones v. Smith*, 231 F.3d 1227, 1239 n.8 (9th Cir. 2000) (citing *Boag v. Raines*,

22  769 F.2d 1341, 1344 (9th Cir. 1985)) (an attorney's failure to make a meritless objection or

23  motion does not constitute ineffective assistance of counsel)).  *See also Matylinsky v. Budge*, 577

24  F.3d 1083, 1094 (9th Cir. 2009) (counsel's failure to object to testimony on hearsay grounds not

25  ineffective where objection would have been properly overruled); *Rupe v. Wood*, 93 F.3d 1434,

26  1445 (9th Cir. 1996) ("the failure to take a futile action can never be deficient performance").

27         The same is true with respect to petitioner's jury instruction and prosecutorial misconduct

28  claims.  Petitioner's arguments, which are all directed to the fingerprint evidence, fail to establish

1  error by the trial court or the prosecutor.  Accordingly, trial counsel's failure to object to the jury

2  instructions or the prosecutor's closing argument does not constitute ineffective assistance and

3  did not result in prejudice.

4      For these reasons, petitioner is not entitled to habeas relief on his claims of ineffective

5  assistance of counsel.

6      **E.  Cumulative Error**

7      In his final ground for relief, petitioner claims that the cumulative effect of errors at his

8  trial violated his right to due process.  ECF No. 1 at 36-37.

9      The cumulative error doctrine in habeas recognizes that, "even if no single error were

10  prejudicial, where there are several substantial errors, 'their cumulative effect may nevertheless

11  be so prejudicial as to require reversal.'" *Killian v. Poole*, 282 F.3d 1204, 1211 (9th Cir. 2002)

12  (quoting *United States v. de Cruz*, 82 F.3d 856, 868 (9th Cir. 1996)).  However, where there is no

13  single constitutional error existing, nothing can accumulate to the level of a constitutional

14  violation.  *See Fairbank v. Ayers*, 650 F.3d 1243, 1257 (9th Cir. 2011), *cert. denied*, __ U.S. __,

15  132 S.Ct. 1757 (2012) ("[B]ecause we hold that none of Fairbank's claims rise to the level of

16  constitutional error, 'there is nothing to accumulate to a level of a constitutional violation.'")

17  (citation omitted); *Hayes v. Ayers*, 632 F.3d 500, 524 (9th Cir.2011) ("Because we conclude that

18  no error of constitutional magnitude occurred, no cumulative prejudice is possible.").  "The

19  fundamental question in determining whether the combined effect of trial errors violated a

20  defendant's due process rights is whether the errors rendered the criminal defense 'far less

21  persuasive,' *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973), and thereby had a 'substantial

22  and injurious effect or influence' on the jury's verdict."  *Parle v. Runnels*, 505 F.3d 922, 927 (9th

23  Cir. 2007) (quoting *Brecht*, 507 U.S. at 637).

24      This court has addressed petitioner's claims of error and has concluded that no error of

25  constitutional magnitude occurred.  There is also no evidence that an accumulation of errors

26  rendered petitioner's trial fundamentally unfair.  Accordingly, petitioner is not entitled to relief on

27  his claim that cumulative error violated his right to due process.

28  /////

**IV. Conclusion**

For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).  In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case.  *See* Rule 11, Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED:  June 23, 2015.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE